UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
J & J SPORTS PRODUCTIONS, INC.,

                     Plaintiff,

- against -

PETRA M ESPINAL, individually and d/b/a
111 Deli Stop Corp, and 111 DELI STOP
CORP, an unknown business entity d/b/a 111
Deli Stop Corp,

                     Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-5180 (PKC) (RER)

PAMELA K. CHEN, United States District Judge:

      Plaintiff J & J Sports Productions, Inc. brought this action alleging that Defendants Petra M Espinal, individually and d/b/a 111 Deli Stop Corp, and 111 Deli Stop Corp, an unknown business entity d/b/a 111 Deli Stop Corp ("111 Deli"), violated Plaintiff's rights as the exclusive commercial domestic distributor of a telecast entitled *Saul Alvarez v Liam Smith WBO World Super Welterweight Championship Fight Program* (the "Program") under 47 U.S.C. §§ 605 and 553. (*See generally* Complaint ("Compl."), Dkt. 1.)  Plaintiff now moves for default judgment, statutory damages, and full costs including reasonable attorneys' fees. (Dkt. 10.)  For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

**I.    Factual Allegations[1]**

Pursuant to contract, Plaintiff was granted the exclusive nationwide commercial distribution rights to the Program, which was telecasted nationwide on September 17, 2016. (Compl., Dkt. 1, ¶ 19.)  Plaintiff entered into subsequent sublicensing agreements with various commercial entities throughout North America, including New York, by which Plaintiff granted these entities limited sublicensing rights to publicly exhibit the Program within their respective commercial establishments.  (*Id.* ¶ 20.)  The Program could only be exhibited in a commercial establishment if that establishment had been authorized to do so by Plaintiff.  (*Id.* ¶ 21.)  The Program "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." (*Id.* ¶ 24.)  The Program was electronically coded or "scrambled," and, if an establishment was authorized to receive the Program, then Plaintiff would provide the establishment with the requisite electronic decoding equipment or contact the establishment's satellite or cable provider to decode the transmission of the Program.  (*Id.* ¶¶ 24–25.)

Defendant Espinal is the owner of 111 Deli, which operates in Corona, New York.  (*Id.* ¶¶ 7–11.)  Although Defendants were never granted sublicensing rights, they nonetheless displayed the Program at 111 Deli on September 17, 2016, resulting in increased profits for Defendants.  (*Id.* ¶¶ 16, 26, 28.)  As Plaintiff summarizes, "[w]ith full knowledge that the *Program* was not to be intercepted, received, published, and/or exhibited by commercial entities

---

[1] The Court accepts all well-pleaded factual allegations in the complaint—except those relating to damages—as true, summarizing them here where relevant.  *See Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 204 (E.D.N.Y. 2009) ("[W]hen the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (internal quotation marks and citation omitted)).

unauthorized to do so, [] Defendant[s], either through direct action or through actions of employees or agents directly imputable to Defendant[s] . . . ," did "unlawfully intercept, receive, publish, and/or exhibit the *Program* at the time of its transmission at" 111 Deli. (*Id.* ¶ 32 (italics in original).) Six people viewed the Program at 111 Deli on September 17, 2016. (Loughlin Declaration, Dkt. 10-3, at ECF[2] 36.)

## II.   Procedural History

On September 11, 2019, Plaintiff filed this action against Defendants. (*See generally* Compl., Dkt. 1.) To date, Defendants have failed to appear, plead, or otherwise respond to the complaint. The applicable time limit for answering or otherwise responding to the complaint has expired, and the Clerk's Certificate of Default was entered on November 26, 2019. (Dkt. 9.) Plaintiff filed a motion for default judgment on February 26, 2020. (Plaintiff's Motion for Default Judgment ("Pl.'s Mot."), Dkt. 10.) Plaintiff also filed Certificates of Service confirming that a copy of its motion for default judgment, along with the appended memorandum of law, affidavit, and declaration had been served on Defendants via certified mail on February 26, 2020. (Dkt. 10, at ECF 4; Dkt. 10-1, at ECF 12; Dkt. 10-2, at ECF 20; Dkt. 10-3, at ECF 39.) To date, Defendants have not filed a response to Plaintiff's motion for default judgment.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 55(a), the procedure for default judgment against a party who "fails to plead or otherwise defend" in a matter includes two steps: "first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 128 (2d Cir. 2011) (citation omitted). "The first step, entry of a default, formalizes

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* "[A] party's default is deemed to constitute a concession of all well[-]pleaded allegations of liability." *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (internal quotation marks and citations omitted).

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the Court decides it is entitled, to the extent permitted by Rule 54(c)."[3] *Mickalis*, 645 F.3d at 128. "[T]he decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007). Default judgments "track[] the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "However, it is also true that a district court need not agree that the alleged facts constitute a valid cause of action," *Mickalis*, 645 F.3d at 137 (internal quotation marks and citation omitted), and the Court is therefore "required to determine whether [Plaintiff's] allegations establish [Defendants'] liability as a matter of law," *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

## DISCUSSION

### I. Liability

Plaintiff seeks default judgment for its claims under § 605 of the Federal Communications Act of 1934 (the "FCA").[4] Section 605 of the FCA provides in relevant part that "[n]o person not

---

[3] Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

[4] Where a plaintiff alleges that §§ 553 and 605 are violated by the same conduct, a plaintiff may ordinarily recover under only one statute. *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129

4

being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). In the Second Circuit, courts have applied § 605 to theft of cable communications that were originally radio or satellite communications. *Cmty. Television Sys. Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002).

### A. Defendant 111 Deli

Plaintiff alleges that Defendant 111 Deli "was an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an entity with dominion, control, oversight[,] and management of" the commercial establishment doing business as 111 Deli. (Compl., Dkt. 1, ¶ 8.) The Court has taken judicial notice of an entry in New York State's Department of State Corporation and Business Entity Database relating to this issue. *See Saudi v. Marine Atl., Ltd.*, No. 02-CV-2495 (SJF) (LB), 2005 WL 8156849, at *4 (E.D.N.Y. July 1, 2005) (taking judicial notice that entity "is a Delaware corporation, and is listed as such on the New York Department of State Corporation and Business Entity Database"). The entry lists "111 Deli Stop Corp." as a domestic business corporation located in Corona, New York, that first filed documents with the Department of State on June 11, 2012. *See* Corporation and Business Database, New York Department of State, Division of Corporations, https://appext20.dos.ny.gov/corp_public/CORPSEARCH.SELECT_ENTITY (search "111 Deli Stop") (current as of May 20, 2020). Based on the foregoing, the Court is persuaded that Defendant 111 Deli is the owner of the commercial establishment known as 111 Deli.

---

(2d Cir. 1996). Here, Plaintiff has elected to recover damages under § 605 rather than § 553. (*See* Pl.'s Mot., Dkt. 10, ¶ 3; Plaintiff's Brief ("Pl.'s Br."), Dkt. 10-1, at ECF 4–5.)

5

Plaintiff alleges that (1) Plaintiff had the exclusive rights to broadcast the Program (Compl., Dkt. 1, ¶ 19); (2) Defendant 111 Deli had not entered into a sublicensing agreement with Plaintiff to broadcast the Program (*id.* ¶ 28); (3) the Program was broadcast in a "scrambled" or electronically coded form (*id.* ¶ 24); (4) the Program originated as a satellite communication (*id.*); and (5) Defendant 111 Deli broadcasted the Program on September 17, 2016 (*id.* ¶ 26). Plaintiff thus alleges that Defendant 111 Deli was not "authorized" to broadcast the Program but "intercept[ed the] radio communication" and "publish[ed]" the contents of that communication to its patrons that night. *See* 47 U.S.C. § 605(a). "Courts have routinely found similar allegations sufficient to state a claim for relief under section 605 of the FCA." *J & J Sports Prods., Inc. v. Shaw*, No. 19-CV-2383 (AMD) (ST), 2020 WL 1034361, at *3 (E.D.N.Y. Feb. 12, 2020) (collecting cases), *report and recommendation adopted*, No. 19-CV-2383 (AMD) (ST), 2020 WL 1031804 (E.D.N.Y. Mar. 3, 2020). Accordingly, the Court finds that Defendant 111 Deli is liable for violating § 605(a) of the FCA.

### B.     Defendant Espinal

Plaintiff seeks to recover damages from Defendant Espinal individually (*see* Pl.'s Mot., Dkt. 10, ¶ 3), but does not present any argument in favor of individual liability in its brief (*see generally* Pl.'s Br., Dkt. 10-1).

Where, as here, a plaintiff successfully alleges that owners of a commercial establishment have violated § 605, the plaintiff "may seek to impose liability on the [individual owner-defendants] under the theories of 'contributory infringement' or 'vicarious liability.'" *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505 (NGG) (PK), 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)). "Contributory infringement occurs

when a defendant authorized the violations." *Id.* (citing *Softel*, 118 F.3d at 971). A defendant may be held vicariously liable so long as she had a "right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of the copyrighted materials." *Shaw*, 2020 WL 1034361, at *3 (internal quotation marks and citation omitted).

Plaintiff's complaint suggests that Plaintiff seeks to hold Defendant Espinal liable on theories of both contributory infringement and vicarious liability. Plaintiff alleges that Defendant Espinal was identified as the owner and principal of 111 Deli and had the right and ability to supervise the activities of 111 Deli as well as an obvious and direct financial interest in the activities of 111 Deli. (Compl., Dkt. 1, ¶¶ 9, 12, 15.) Additionally, Plaintiff alleges that Defendant Espinal specifically directed the unlawful interception and publication of the Program. (*Id.* ¶ 14.)

The Court holds that these allegations are insufficient to support liability for Defendant Espinal under either contributory infringement or vicarious liability.[5] "A plaintiff fails to meet his or her burden of establishing vicarious liability by merely restating the legal standard without more factual information." *Shaw*, 2020 WL 1034361, at *3 (citation omitted); *see also id.* ("A plaintiff is required to set forth some *specific* evidence to demonstrate the individual defendant's supervision of the infringing broadcast and his or her direct financial interest in it." (emphasis in original) (citation omitted)). Here, "[w]ithout factual support, the Court cannot accept J & J's conclusory allegation that [the individual defendant] specifically directed or permitted the employees of [the institutional defendant] to unlawfully broadcast the Program." *J & J Sports Prods., Inc. v. Gonzalez*, No. 18-CV-2319 (RRM) (RER), 2019 WL 3716197, at *6 (E.D.N.Y. May 9, 2019) (internal quotation marks omitted), *report and recommendation adopted sub nom.*

---

[5] Because Plaintiff did not explicitly mention contributory infringement or vicarious liability in its brief, the Court relies on the complaint as stating the entirety of Plaintiff's arguments as to the liability of Defendant Espinal.

7

*J&J Sports Prods., Inc. v. Gonzalez*, No. 18-CV-2319 (RRM) (RER), 2019 WL 4888635 (E.D.N.Y. Sept. 30, 2019). The Court therefore denies Plaintiff's motion for default judgment as to Defendant Espinal. *See, e.g.*, *J & J Sports Prods. Inc. v. Inga*, No. 18-CV-2542 (PKC) (RLM), 2019 WL 1320278, at *5–6 (E.D.N.Y. Mar. 22, 2019) (denying motion for default judgment because plaintiff merely made conclusory allegations without more factual information with respect to individual defendant's liability).

## II. Damages

Because Plaintiff has established liability as to Defendant 111 Deli, Plaintiff is entitled to damages. On a motion for default judgment, the Court will not accept as true Plaintiff's factual allegations related to damages. *LX Food Grocery*, 2016 WL 6905946, at *2 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). "The court must be satisfied that Plaintiff has met the burden of proving damages to the court with 'reasonable certainty.'" *Id.* (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "Although requests for damages are usually established by the plaintiff in an evidentiary hearing, the court can make such a determination without a hearing when supported by sufficiently detailed affidavits and documentary evidence." *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 19997)).

In Plaintiff's complaint, Plaintiff alleges that it is entitled to the following for Defendant 111 Deli's violation of § 605: (1) statutory damages in the amount of $10,000; (2) statutory damages for each willful violation in the amount of $100,000; and (3) the recovery of full costs, including reasonable attorneys' fees. (Compl., Dkt. 1, ¶ 37.) In Plaintiff's motion for default judgment, however, Plaintiff indicates that it is requesting $1,800 in statutory damages, $5,400 in enhanced statutory damages, as well as pre- and post-judgment interest at the federal

8

statutory rate. (Pl.'s Mot., Dkt. 10, at ECF 3.) Plaintiff also requests costs and attorney's fees. (*Id.*)

### A. Statutory Damages

Section 605 of the FCA provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). "The amount of damages to be assessed pursuant to Section 605 rests within the sound discretion of the Court." *Time Warner Cable of N.Y.C. v. Sanchez*, No. 02-CV-5855 (GBD) (FM), 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003).

> Courts in this jurisdiction typically utilize two methodologies to calculate damages under Section 605(e)[(3)](C)(i)(II), and base the damages award on the higher of the two totals. Under the "flat fee" method, the court calculates the amount that defendants would have paid in exchange for the right to show the [event or program] legally—in this case, Plaintiff's licensing fee. Under the "per-person" method, damages are equal to the amount an individual consumer would have paid to view the [event or program] pay-per-view, multiplied by the number of consumers who watched the illegally transmitted [event or program].

*LX Food Grocery*, 2016 WL 6905946, at *4 (citations omitted).

Even though Plaintiff requests $1,800 in statutory damages, Plaintiff's brief is at times inconsistent with respect to the requested amount and seems to contain errors. Plaintiff first argues that the Court should not utilize either of the above approaches. (Pl.'s Br., Dkt. 10-1, at ECF 6–8.) Plaintiff goes on to state that "[t]he cost for [111 Deli] to broadcast the Program lawfully was $16,200," citing to the Gagliardi Affidavit, but then only requests "$1,800[], which is three times the licensing fee."[6] (*Id.* at ECF 8.) This does not make any mathematical sense. Nor does the $16,200 figure have any support in the record. The Gagliardi Affidavit

---

[6] To the extent that Plaintiff argues that it should be awarded three times the licensing fee, "[c]onsistent with recent decisions in this Circuit, [the] Court declines J & J Sports' request to deviate from the well-established practice in this District." *Shaw*, 2020 WL 1034361, at *5 (collecting cases) (declining to adopt treble damages).

9

states that "[t]he commercial sublicense fee for [111 Deli] was $16,200" (Gagliardi Affidavit, Dkt. 10-2, at ECF 3), but the "rate card" relied on by the Affidavit does not have a category for a rate of $16,200 (*id.* at ECF 19). Rather, the rate card shows that the rate for an establishment with "1–100" capacity is $1,800 and that the rate for the highest capacity listed is $4,800, far lower than the $16,200 sworn to in the Gagliardi Affidavit. (*Id.*) Furthermore, the alleged $16,200 licensing fee would exceed the $10,000 limit for statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Because Plaintiff specifically requests $1,800, the Court only evaluates whether Plaintiff is entitled to that amount in statutory damages.

The Court finds that Plaintiff is entitled to $1,800 in statutory damages under the "flat fee" method. Plaintiff submitted a rate card that establishes that 111 Deli would have been charged a licensing fee of $1,800 to broadcast the Program. (Gagliardi Affidavit, Dkt. 10-2, at ECF 19.) As for the per-person calculation, Plaintiff has not presented any evidence regarding what the six individuals present would have been charged to watch the Program in his or her home, and the Court doubts that this method would produce a higher amount than $1,800. *See J & J Sports Prods., Inc. v. Vasquez*, No. 19-CV-5238 (BMC), 2019 WL 7194405, at *2 (E.D.N.Y. Dec. 26, 2019) ("[T]here were 6 patrons present, and the Court doubts the cost of watching this particular boxing match at home exceeded $300[.]"); *id.* at *2 n.2 ("Courts in the Eastern District of New York have adopted $54.95-per-patron as a seemingly market based standard when determining what a patron would pay to view certain programs at home." (citation omitted)).

### B.     Enhanced Damages

"In any case in which the court finds that [an FCA violation] was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its

10

discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii).

> To determine whether willful conduct warrants an award of enhanced damages, courts typically consider, *inter alia*, whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks.

*J & J Sports Prods., Inc. v. Big Daddy's Theme Palace*, No. 14-CV-2765 (JG) (JMA), 2015 WL 58606, at *5 (E.D.N.Y. Jan. 5, 2015) (internal quotation marks and citations omitted).

Plaintiff requests $5,400 in enhanced damages. (Pl.'s Mot., Dkt. 10, at ECF 3.) The Court declines to do so. Plaintiff has not alleged any facts, or presented sufficient evidence, to support a finding of willfulness that warrants an award of enhanced damages. First, there is no evidence of repeat violations. Second, "[t]o the extent Defendants' failure to pay for a license constitutes 'actual damages,' that cost is already factored into Plaintiff's statutory damages award." *LX Food Grocery*, 2016 WL 6905946, at *5. Third, the evidence submitted by Plaintiff indicates that there were approximately six individuals in 111 Deli when the violation occurred (Loughlin Declaration, Dkt. 10-3, at ECF 36), and Plaintiff presents no evidence that this number of patrons exceeds the number of people who would have been present in the establishment at any other time, or that Defendant 111 Deli recovered increased profits as a result of airing the Program. Fourth, Plaintiff presents no proof that Defendant 111 Deli advertised its airing of the Program. Finally, Plaintiff does not establish that Defendant 111 Deli imposed cover charges during the unlawful airing of the Program.

However, in cases such as this, some "courts in our Circuit have awarded enhanced damages as a deterrent to the problem of persistent signal piracy and to compensate Plaintiff for intangible losses such as business investment, business opportunities, reputation, and goodwill."

11

*Shaw*, 2020 WL 1034361, at *6 (E.D.N.Y. Feb. 12, 2020) (internal quotation marks and citation omitted). The Court finds that merely awarding Plaintiff the amount of the sublicensing fee as statutory damages would insufficiently deter future signal piracy and insufficiently compensate Plaintiff for these intangible losses. *See, e.g.*, *id.* (awarding $2,200 in enhanced damages where the licensing fee was $2,200 and none of the factors was present); *Vasquez*, 2019 WL 7194405, at *2 (awarding $9,000 in enhanced damages where the licensing fee was $1,800). Accordingly, the Court awards Plaintiff enhanced damages in the amount of $1,800, which is equal to the award of statutory damages.

### C. Costs and Interests

The FCA requires courts to "direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). The Court grants Plaintiff's request to submit an affidavit and accompanying letter establishing the amount of costs and attorney's fees it seeks to recover within thirty (30) days from the entry of this Memorandum and Order.

Additionally, Plaintiff requests pre- and post-judgment interest at the federal statutory rate. (Pl.'s Mot., Dkt. 10, at ECF 3.) Although § 605 of the FCA does not provide for an award of pre-judgment interest, the Court has discretion to award pre-judgment interest when doing so is "fair, equitable[,] and necessary to compensate the wronged party fully." *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 835 (2d Cir. 1992). However, "[c]ourts should not award pre[-]judgment interest where the statutory obligation on which interest is sought is punitive in nature." *LX Food Grocery*, 2016 WL 6905946, at *5 (internal quotation marks and citation omitted). As that is the basis on which Plaintiff seeks enhanced damages, the Court denies Plaintiff's request for pre-judgment interest. *See J & J Sports Prods., Inc. v. La Ruleta, Inc.*, No. 11-CV-4422 (NGG) (VVP), 2012 WL 3764062, at *5

(E.D.N.Y. Aug. 7, 2012) ("Most courts in this district that have addressed this issue have declined to award [pre-judgment] interest noting that '[s]tatutory damages under the [FCA] are analogous to punitive damages in that they are designed to deter others from similar infringing activity.'" (collecting cases)).

The Court, however, grants Plaintiff's request for post-judgment interest, as provided for by 28 U.S.C. § 1961. *See Shaw*, 2020 WL 1034361, at *7 (awarding post-judgment interest because "[n]o such barrier exists for awarding post-judgment interest in FCA cases" (collecting cases)).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is granted in part and denied in part. The motion is granted as to the liability of Defendant 111 Deli under 47 U.S.C. § 605, and denied as to Defendant Espinal. The Court awards Plaintiff damages in the total amount of $3,600. The Court grants Plaintiff leave to submit an affidavit and accompanying letter establishing the amount of attorney's fees it seeks to recover within thirty (30) days from the entry of this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment in Plaintiff's favor. The Court orders Defendant 111 Deli to pay Plaintiff post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 26, 2020
       Brooklyn, New York

13